UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                    :
THE ROYALTY NETWORK INC.,                           :
                                                    :          08 Civ. 8558 (SHS)
                                    Plaintiff,       :
                                                    :          OPINION & ORDER
                      -against-                      :
                                                    :
DISHANT.COM, LLC; DISHANT G. SHAH;                   :
MEETA SHAH; C I HOSTING, INC., and                  :
PROPAGATION NETWORKS, INC.                           :
                                                    :
                                    Defendants.      :
                                                    :
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

    Defendant Dishant.com, LLC, through its proprietors—defendants Dishant G.

Shah and Meeta Shah—operates a website, www.dishant.com, which is the self-

proclaimed "home to Indian music."  The website invites visitors to play Indian music, to

create "playlists" of Indian songs, and to "listen to and download Bollywood Movie

ringtones."[1]

    Plaintiff Royalty Network, Inc. is the designated American administrator of music

owned by non-party Saregama India, Ltd., a music recording company based in India.  As

the administrator, Royalty collects all royalties and other fees derived from copyrights

Saregama holds on its music.  Royalty contends defendants' website provides visitors

with unauthorized access to music produced and owned by Saregama, thereby violating

Saregama's copyrights and denying Royalty royalties to which it is entitled.  After

notifying defendants of their allegedly infringing behavior, Royalty filed this complaint

---

[1] A "ringtone" is a "tune that plays when an individual who has purchased a ringtone receives a telephone
call."  United States v. ASCAP, 599 F. Supp. 2d. 415, 420 (S.D.N.Y. 2009).

bringing Copyright Act, Lanham Act, and New York State law claims against Dishant.com, LLC and Dishant and Meeta Shah.[2]

Dishant.com, LLC and Dishant and Meeta Shah now move to dismiss the complaint on the grounds that this Court lacks personal jurisdiction over them.[3]  In particular, those defendants argue that despite the ability of New York residents to access the website, Dishant.com, LLC is a Virginia-based company that does no business in New York, owns no property in New York, and has no contacts in or with the state, and, therefore, this Court does not have jurisdiction over the corporate defendant.  Absent jurisdiction over the corporation, defendants continue, the Court also lacks jurisdiction over individual defendants Dishant and Meeta Shah.  Accordingly, it contends dismissal pursuant to Fed. R. Civ. P. 12(b)(2) is appropriate.

Royalty opposes dismissal, contending that this Court has jurisdiction over defendants pursuant to New York's "long-arm" statute, N.Y. C.P.L.R. § 302, on the basis that Dishant "transacts . . . business within the state" and that this suit arises out of those transactions of business. See N.Y. C.P.L.R. § 302(a)(1).  Alternatively, Royalty asserts jurisdiction is appropriate pursuant to section 302(a)(3)(ii) which confers jurisdiction over those who commit tortious acts outside the state that cause injury within the state, provided the defendant expected or should have reasonably expected its acts to have consequences in New York.  Finally, Royalty contends that jurisdiction over individual defendants Dishant and Meeta Shah can be founded solely on this court's jurisdiction

---

[2] The complaint also contains claims of contributory infringement against C I Hosting, Inc. and Propagation Networks, Inc. which allegedly serve as web "hosts" for the website.  However, neither of those defendants has appeared in this action, and therefore the Court will not address the claims brought against them further.  Accordingly, any reference to "defendants" in this opinion does not include either C I Hosting or Propagation Networks.

[3] Although the notice of motion was made solely by the individual defendants proceeding pro se, the parties all treat the motion as also made by Dishant.com, LLC and the Court will accordingly do so as well.

over the corporate defendant because the individuals acted on behalf of the corporation and thereby engaged in all of the allegedly infringing activity.

Because this Court finds that neither provision of New York's long-arm statute confers jurisdiction over these defendants in this matter, defendant's motion to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) is granted.

## I.     BACKGROUND

Unless otherwise noted, the following facts are taken from the complaint and presumed to be true:

### A.     The Parties

Plaintiff Royalty Network, Inc. is a New York corporation with its principal place of business located within the Southern District of New York.  (Compl. ¶ 1.)  Pursuant to a written agreement dated November 29, 2005, Royalty serves as the American administrator of songs owned by Saregama India, Ltd., an Indian corporation and one of that country's largest music recording companies.  (Id. ¶¶ 2, 3.)  As the administrator, Royalty has the right to collect all royalties, fees, and other income derived from the copyrights held by Saregama on all of its musical compositions and master records, and has been authorized by Saregama to proceed as the plaintiff in this suit.  (Id. ¶ 3; Ex. N to Decl. of Frank Liwall dated Dec. 11, 2008.)

Defendant Dishant.com, LLC is a limited liability company formed under the laws of Virginia and with a principal place of business in Richmond, Virginia.  (Id. ¶ 4.) Dishant.com, LLC, through its officers, directors, and employees—specifically defendants Dishant and Meeta Shah—operates the website www.dishant.com.  (Id. ¶¶ 4, 7-8, 11-12.)

According to the complaint, Dishant Shah personally conceived of and created the website and, along with Meeta Shah, authorizes and directs all of the website's activities, including the allegedly infringing activity at issue in this action.  (Id. ¶¶ 6-9, 10-13.)

B.    The Website

According to the complaint, www.dishant.com allows users to register and obtain a username; to play an extensive collection of Indian music; to create and save personal "playlists" for future use; and to download ringtones.  (Id. ¶ 5.)   The website, which professes to be the "Home of Indian Music," is available in several languages, and provides access to not only music, but to movies and photographs as well.  (Motta Decl. ¶ 6; www.dishant.com (last visited July 27, 2009).)

Royalty contends Saregama owns—and has assigned to Royalty—copyrights in at least 25 percent of the music available on www.dishant.com either as streaming media or as downloadable ringtones.  (Id. ¶¶ 5, 13.)  By way of example, Royalty identifies approximately 90 songs all validly copyrighted by Saregama but available to be listened to without plaintiff's permission on www.dishant.com.  (Ex. A to Compl.)

While all of the services offered by the website are free of charge to users, Royalty contends Dishant derives substantial revenues from operating the site.  (Id. ¶¶ 7, 12.)   It does so, plaintiff argues, by selling advertisements to such well-known national companies as Verizon, Citibank, and American Express, which seek to reach Dishant's primarily South Asian audience.  (Decl. of Anthony Motta dated Dec. 12, 2008 ("Motta Decl.") ¶¶ 8-10.)  Operating on the so-called "broadcast" or "advertising model," the website thus makes money by selling advertisers the opportunity to reach the website's audience.  (Id. ¶ 11; Ex. F to Motta Decl.)

In particular, www.dishant.com offers advertisers the opportunity to engage in "targeted advertising."  (<u>Motta Decl.</u> ¶ 10.)  As the website tells potential advertisers, www.dishant.com attracts "hundreds of thousands of South Asian visitors" and "this number is increasing by the day!," thus offering advertisers a unique opportunity to reach that particular audience with advertisements on the website.  (<u>Id.</u>; Ex. E to Motta Decl.)  Royalty contends a significant percentage of those visitors are based in the United States.  And while it does not identify any specific visitor to the site, it provides data indicating that as many as 47,000 individuals in the United States visit www.dishant.com each month.  (Ex. H to Motta Decl.)

        C.      The Complaint

The complaint contains seven counts brought pursuant to federal and New York state law.  Count One alleges that defendants' operation of www.dishant.com infringes copyrights validly held by Saregama and assigned to Royalty, thereby violating section 501 of the Copyright Act.  (Compl. ¶¶ 25-28.)  In so doing, Royalty contends defendants are damaging Royalty's "goodwill and reputation" and "destroying the commercial market for the Songs administered by plaintiff and owned by Saregama."  (<u>Id.</u> ¶ 34.)  Count One thus seeks lost profits or, if lost profits are unascertainable, statutory damages in addition to the fees and costs incurred in bringing this action.  (<u>Id.</u> ¶¶ 31-33.)  Count Two raises identical claims against Dishant and Meeta Shah in their individual capacities as operators of www.dishant.com.  (<u>Id.</u>  ¶¶ 36-42.)[4]

Count Four of the complaint alleges defendants' website not only makes plaintiff's music available to the public without permission but does so while also

---

[4] Count Three alleges contributory copyright infringement against C I Hosting and Propagation Networks. However, there is no indication in the record to suggest those two defendants have yet been served with the summons and complaint, and neither has made an appearance in this action.

depicting Saregama's artwork and logo in an attempt to "deceive . . . the public" into believing that www.dishant.com is authorized by Saregama.  (Id. ¶¶ 61-62).  Royalty contends defendants are thus falsely designating www.dishant.com as a owner or originator of the copyrights and causing copyright dilution in violation of section 43(a) of the Lanham Act., 15 U.S.C. § 1125(a).  (Id. ¶¶ 64-65.)

Counts Five through Seven, which are based on the same conduct, allege deceptive acts or practices in violation of New York law, (id. ¶¶ 66-69), and common law unfair competition and unjust enrichment.  (Id. ¶¶ 71, 73-75.)

## II.    DISCUSSION

### A.    The Motion to Dismiss Standard

A plaintiff bears the burden of establishing the Court's jurisdiction over the defendant on a motion to dismiss the complaint pursuant to Rule 12(b)(2).   Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996).  Where, as here, the challenge to jurisdiction is made before the parties have had an opportunity to engage in discovery, a plaintiff need only make a "prima facie showing" that jurisdiction exists, and a plaintiff meets its burden by pleading good faith allegations sufficient, if proven, to establish jurisdiction.  Capitol Records, LLC v. VideoEgg, Inc., No. 08-cv-5831, 2009 U.S. Dist. LEXIS 19557, at *8 (S.D.N.Y. Mar. 9, 2009); Bensusan Rest. Corp. v. King, 937 F. Supp. 295, 298 (S.D.N.Y. 1996), aff'd 126 F.3d 25 (2d Cir. 1997).

 While the Court may look beyond the complaint to satisfy itself that it has jurisdiction to hear the case, DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001); Bensusan Rest. Corp., 937 F. Supp. at 298, at this stage, the Court construes the pleadings and any other materials it considers in the light most favorable to the plaintiff,

resolving all ambiguities in its favor.  A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993) (citations omitted).

      B.      New York's Long-Arm Statute

      In a federal question case, a federal court applies the personal jurisdiction rules of the forum state unless the federal statute specifically provides for national service of process.  PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997).  Because neither the Copyright Act nor the Lanham Act provides for nationwide service of process, the Court looks to New York law to determine whether it has personal jurisdiction over this non-domiciliary defendant.  Fort Knox Music, Inc. v. Baptiste, 203 F.3d 193, 196 (2d Cir. 2000) (Copyright Act); PDK Labs, 103 F.3d at 1108 (Lanham Act).  If, "but only if," jurisdiction is found under New York law, the court must then determine "whether asserting jurisdiction under that [law] would be compatible with requirements of due process established under the Fourteenth Amendment to the United States Constitution." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 315 (1945)).

      New York law provides for both general and specific jurisdiction over non-domiciliary defendants.  Royalty does not contend that defendants' contacts with New York are so "continuous and systematic" as to make them "subject to the jurisdiction of New York on a general jurisdiction theory."  Sole Resort, S.A. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006).  Indeed, Royalty does not appear to dispute that defendants operate the website "solely from the state of Virginia" and that defendants "do not have an office, real estate or any employee in the State of New York."  (Aff. of Dishant and Meeta Shah dated Oct. 28, 2009 ("Shah Aff.") ¶ 4.)

Instead, Royalty argues two different provisions of C.P.L.R. § 302(a)—New York's "long-arm statute"—afford this Court specific jurisdiction over Dishant.com, LLC. First, Royalty contends section 302(a)(1), which confers jurisdiction over any person who "transacts business within the state," applies because defendants, through their website, transact business in New York. N.Y. C.P.L.R. § 302(a)(1). Alternatively, Royalty contends section 302(a)(3)(ii), which confers jurisdiction over any person who commits a "tortious act without state" that causes injury within state, applies and gives this Court jurisdiction over these non-domiciliary defendants. N.Y. C.P.L.R. § 302(a)(3)(ii). The Court considers each provision in turn.

                1.       "Transacts Business" in New York

To make a prima facie showing of jurisdiction pursuant to section 302(a)(1), a plaintiff must establish, first, that defendant transacted business within the state of New York, and second, that this action arises from that transaction of business. N.Y. C.P.L.R. § 302; <u>Sole Resort,</u> 450 F.3d at 104.

For purposes of the long-arm statute, a party "transacts business" within the state when it "purposefully avails itself of the privilege of conducting activities within New York." <u>Ehrenfeld v. Bin Mahfouz,</u> 9 N.Y.3d 501, 508 (2007). Purposeful availment— the "overriding criterion" necessary to establish personal jurisdiction pursuant to C.P.L.R. section 302(a)(1)— requires more than "random, fortuitous, or attenuated contacts." <u>Capitol Records,</u> 2009 U.S. Dist. LEXIS 19557, at *11 (quoting <u>Burger King Corp v. Rudzewicz,</u> 471 U.S. 462, 475 (1985)). Instead, "[p]urposeful activities are those with which the defendant, through volitional acts, avails itself of the privilege of conducting

activities within [New York], thus invoking the benefits and protections of its laws."
Fischbarg v. Doucet, 9 N.Y.3d 375, 380 (2007) (quotations and citations omitted).

As New York courts have explained, section 302(a) is a "single act statute"
pursuant to which "proof of one transaction in New York is sufficient to invoke
jurisdiction, even though the defendant never enters New York, so long as the
defendant's activities here were purposeful and there is a substantial relationship between
the transaction and the claim asserted."  Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460,
467 (1988).  Alternatively, even where no specific transaction exists, jurisdiction may be
founded on a course of conduct connecting a defendant to the forum state.  See, e.g.,
Cutco Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986) ("Totality of all
defendant's contacts with the forum state . . . indicate that the exercise of jurisdiction
would be proper.")

a.   Jurisdiction over a Website—The "Spectrum of Interactivity"

Where a plaintiff seeks to invoke section 302(a) over a non-domiciliary defendant
based on its operation of a website, the jurisdictional inquiry requires considerations
particular to that medium.  Because websites are "generally speaking, equally accessible
everywhere," Capitol Records, 2009 U.S. Dist. LEXIS 19557, at *11, the mere
availability of the site to users in New York, standing alone, does not amount to
transacting business in the state for purposes of section 302(a).  Cf. Pearson Educ., Inc v.
Yi Shi, 525 F. Supp. 2d 551, 556 (S.D.N.Y. 2007) ("Simply maintaining a web site in a
distant state that residents of New York visit does not, by itself, subject a defendant to
jurisdiction in New York." (citing Bensusan Rest. Corp. v. King, 126 F.3d 25 (2d Cir.
1997)).

Instead, where jurisdiction is premised on the use of a website by residents of a forum state, courts frame the jurisdictional inquiry[5] by placing a website on a "spectrum" of interactivity.  At one end are "passive" websites—i.e., those that merely make information available to viewers.  Such websites have "been analogized to an advertisement in a nationally-available magazine or newspaper, and does not without more justify the exercise of jurisdiction over the defendant."  Citigroup. Inc. v. City Holding Co., 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000).  At the other end of the spectrum are "interactive" websites—i.e., those that knowingly transmit goods or services to users in other states.  Where an "interactive" website is not only available but also purposefully directs activity into a forum state—for example, by making sales of goods or services to New York residents—those activities can be sufficient to trigger jurisdiction under section 302(a)(1).  Mattel, Inc. v. Adventure Apparel, No. 00 Civ. 4085, 2001 U.S. Dist. LEXIS 3179, at *7-8 (S.D.N.Y. Mar. 22, 2001).  Finally, "occupying the middle ground are cases in which the defendant maintains an interactive web site which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction." Citigroup, 97 F. Supp. 2d at 565.

As a preliminary matter, the parties dispute where on the spectrum the website www.dishant.com falls.  Defendants contend the site is "passive" in that it is merely available to visitors anywhere but does not sell anything to anyone or otherwise purposefully direct its activities into any state, including New York.  By contrast, as

---

[5] The Court takes note of the Second Circuit's guidance that, while the "spectrum of interactivity" may be "useful for analyzing personal jurisdiction under section 302(a)(1)," it "does not amount to a separate framework for analyzing internet jurisdiction."  Best Van Lines, Inc. v. Walker, 490 F.3d 239, 252 (2d Cir. 2007).

Royalty sees it, the website is "interactive" because it allows users to register, to create and save play lists, and to download content—notably ring tones—from the site to their own personal computers.

Royalty is clearly correct insofar as it contends that www.dishant.com is not a "passive" website.  The site allows, indeed invites, a level of interactivity that extends well beyond merely making information available to visitors.  See Citigroup, 97 F.Supp.2d at 565.  However, as other courts in this district have found, defendants' website is likewise not fully "interactive" for jurisdictional purposes because it "does not conduct traditional business over the internet" because "it neither sells goods or services through its website nor charges membership fees to its registered users." Capitol Records, 2009 U.S. Dist. LEXIS 19557, at *13 (citing and collecting authorities, emphasis in original).  Instead, the website falls somewhere in the "middle ground" and thus the jurisdictional inquiry requires closer evaluation of its contact with New York residents.  Cf. Pitbull Prods., Inc.v. Universal Netmedia, Inc., No. 07 Civ. 1784, 2008 U.S. Dist. LEXIS 30633, at *18 (S.D.N.Y. Apr. 4, 2008) (collecting cases) (website that allowed users to post on a message board, but from which "no goods can be ordered or purchased" falls in "middle ground).

Here, Royalty identifies three different sets of contacts with New York that it contends are sufficient to amount to a transaction of business sufficient to trigger jurisdiction pursuant to section 302(a)(1): (1) the site is available to New York visitors who can stream and download material from it; (2) the site sells advertisements to New York-based companies; and (3) defendants registered the domain name—www.dishant.com—through a New York company.

b.        Availability of the Site to New York Residents

Indisputably, defendants' website is available to visitors worldwide, including those in New York.  Equally indisputably, as noted, mere availability to New York residents is insufficient to confer jurisdiction over defendants pursuant to section 302(a)(1).  Instead, Royalty contends the website is not only available to New York residents but also directly transacts business with New York visitors in at least two ways: first, the website allows New Yorkers to register, a process that requires visitors to provide personal information to the website and, in return, allows them to create and save personal preferences such as play lists; second, the website allows New York residents to download files—in particular, ring tones—to their personal computers.

The Court need not decide whether that activity, either singularly or cumulatively, is sufficient to amount to a "transaction of business" for purposes of section 302(a), because even if it could be sufficient, Royalty provides no evidence that any New York resident actually engaged in any such transactions—e.g., registered with the website or downloaded material from it—or that defendants did anything to indicate their knowing and purposeful transaction with New York visitors.[6]

Royalty does not dispute that, at this pre-discovery stage, it cannot identify specific New York users or ascertain the "full extent" to which "New York residents have accessed and used the many services of the Dishant website."  (Pl.'s Mem. of Law in Opp. to Mot. to Dismiss 11.)  Instead, Royalty contends that the website purposefully

---

[6] The only specific users Royalty points to are two of its attorneys, both of whom made use of defendants' site for purposes of this suit.  (Decl. of Anthony Motta dated Dec. 12, 2008, ¶¶ 5-8; Decl. of Andrew Krents dated Dec. 11, 2008, ¶¶ 1-2.)  However, even assuming those attorneys are New York residents, "courts, both in this circuit and elsewhere, have found that personal jurisdiction may not be based on contacts 'manufactured' by a plaintiff in this way."  Chloe v. Queen Bee of Beverly Hills, LLC, 571 F. Supp. 2d 518, 524-25 (S.D.N.Y. 2008) (collecting cases).

targets the Indian population, that a significant percentage of the Indian population within the United States resides in New York, and, therefore, that New York residents <u>must</u> have used the website and that defendants must have intended such use, thereby purposefully availing itself of the New York market.

That argument is simply insufficient. Even assuming those facts could support an inference that transactions with New York residents occurred, they would nonetheless be insufficient to support the further, necessary finding that defendants purposefully and knowingly entered into those transactions with New York residents or otherwise targeted New York for business. In particular, Royalty's argument that New York is home to a legally significant percentage of individuals of Indian descent residing in the United States—itself a questionable conclusion given that at least 85 percent of such individuals live outside of New York state—is insufficient to establish an intent to target the state given that defendants contend, and plaintiffs do not dispute, that the website's primary audience is not visitors to the site from America at all but instead residents of India. (Shah Aff. ¶ 4; Pl.'s Mem. of Law in Opp. 5.) Indeed, Royalty's own data shows that users from the United States (and thus any New York-based subset of those users) comprise a tiny fragment—just five percent—of the website's total monthly visitors, (Ex. L to Motta Decl.), thus confirming defendants' averment that "New York visitor traffic is negligible with respect to visitors in India." (Shah Aff. ¶ 4.)

Absent any additional evidence or even specific allegations to be proven through discovery, there is nothing in this record to support a finding that defendants purposefully transacted business via their website with New York visitors. In the context of the section 302(a)(1) jurisdictional inquiry, that failure is fatal: as other courts in this district

have observed "[i]t stretches the meaning of 'transacting business' too far to subject defendants to personal jurisdiction in any state merely for operating a website . . . without some evidence or allegation that commercial activity in that state actually occurred or was actively sought." Freeplay Music, Inc. v. Cox Radio, Inc., No. 04 Civ. 5238, 2005 U.S. Dist. LEXIS 12397, at *20-21 (S.D.N.Y. June 23, 2005); see also Capitol Records, 2009 U.S. Dist. LEXIS 19557, at *14-15 ("[S]ome evidence of volitional activities directed at the forum is required" and similar allegations of web activity insufficient because "it is neither volitional nor distinguishable from [defendants'] interaction with users located in any other jurisdiction").

Accordingly, Royalty's first asserted transaction of business fails to state a prima facie showing of jurisdiction pursuant to section 302(a)(1).

                          c.  Sale of Advertisements to New York-based Companies

Alternatively, Royalty argues that defendants "transact business" within the state by selling advertisements on its website to national advertisers, including companies based in New York such as American Express, Citibank, and Verizon. Royalty further contends those transactions of business are sufficient to create jurisdiction over this case.

While the sale of advertisements to a New York corporation could constitute "transactions of business" for purposes of section 302(a)(1) where a defendant purposefully sought to do business with advertisers in the state or otherwise purposefully availed itself of the forum, here the advertisements in question were sold to large corporations that advertise to national audiences and have offices located throughout the country. There is nothing in the record to indicate defendants sold to, or interacted with,

the New York office of any of its advertisers or that defendants had knowledge that any of those advertisers were headquartered in New York.

Moreover, the website features similar advertisements for companies based all over the country, and among those Royalty identifies, in addition to American Express, Verizon, and Citibank, are Texas-based Dell, Washington-based Microsoft, Colorado-based Dish Network, New Jersey-based Vonage, and California-based Paypal.[7]  Where a defendant's interactions with New York residents is not "distinguishable from [defendants'] interaction with [those] located in any other jurisdiction," the allegations are insufficient because they "lack[] the traditional indicia of 'purposeful availment.'" Capitol Records, 2009 U.S. Dist. LEXIS 19557, at *14.[8]

Even where a defendant website sells to advertisers nationwide, however, at least some courts have found that a defendant purposefully avails itself of the privileges and protections of doing business in New York when it sells to advertisers seeking to reach a New York audience by touting its ability to reach New York users.  See, e.g., Id. at *20. Here, Royalty contends defendants did just that by telling potential advertisers that www.dishant.com could "increase your presence in the South Asian NRI audience"[9] and

---

[7] The Court takes judicial notice of the location of each listed company's principal place of business—as documented in each company's Securities and Exchange Commission filings—for purposes of resolving this motion.  See http://www.sec.gov/edgar.shtml (last visited July 9, 2009); cf. Fed. R. Evid. 201 (Judicial notice appropriate if facts are "not subject to reasonable dispute" and are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned").

[8] Moreover, even if defendants' sale of advertisements to New York corporations could constitute transactions of business for purposes of section 302(a)(1), Royalty's jurisdictional argument would nonetheless fail because Royalty does not establish that this suit arises from those transactions.  N.Y. C.P.L. § 302(a).  As discussed further below, "[a] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York."  Best Van Lines, 490 F.3d 239, 246 (2d Cir. 2007) (quoting Henderson v. INS, 157 F.3d 106, 123 (2d Cir. 1998).  Here, the transactions involve the sale of advertising space to national advertisers, some of whom happen to be based in New York.  Royalty identifies no relationship at all between those transactions and the claims raised in this litigation.

[9] The term "NRI" is apparently an acronym for "non-resident Indian" and as such refers to an "Indian citizen who has migrated to another country, a person of Indian origin who is born outside India, or a

thus offering "targeted advertising!"  (Motta Decl. ¶ 10.)  In so doing, Royalty argues that defendants were, in effect, touting their website's ability to reach New York residents since roughly 15 percent of the Indian population residing in the United States lives in New York.

The argument fails, however, because Royalty's allegations and supporting evidence are inadequate to support the inference of a purposeful attempt to take advantage of the New York market.  First, there is no direct evidence that defendants touted their ability to reach the New York market to anyone.  Moreover, as discussed above, Royalty's data confirms that defendants' website actually attracts visitors primarily from India, not from America, and that "New York visitor traffic is negligible" compared to visitors to the site residing in India.  (Shah Aff. ¶ 4.)  In light of that data, and absent any evidence to the contrary, the Court cannot conclude that defendants touted their ability to reach New Yorkers to potential advertisers, or in any other way purposefully availed themselves of the New York market in their advertising-related transactions of business.

Plaintiff's second asserted transaction of business, therefore, is also insufficient to confer jurisdiction pursuant to section 302(a)(2).

          d.   Registration of a Domain Name with a New York Company

Finally, Royalty proffers that the fact that defendants registered the website domain name—www.dishant.com—through a New York corporation, Register.com, Inc., amounts to a transaction of business within New York sufficient to confer jurisdiction in this Court.  The argument is without merit.

---

person of Indian origin who resides outside India."  http://en.wikipedia.org/wiki/Non-resident_Indian_and_Person_of_Indian_Origin (last visited July 27, 2009).

Assuming defendants' registration of the domain name through a New York corporation validly alleges a purposeful transaction of business in New York, that alone would not end the jurisdictional inquiry. For the Court to have jurisdiction pursuant to section 302(a)(1), the case must also "arise from" that transaction of business. N.Y. C.P.L.R. § 302; Sole Resort, 450 F.3d at 104. "A suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." Best Van Lines, 490 F.3d 239, 246 (2d Cir. 2007) (quoting Henderson v. INS, 157 F.3d 106, 123 (2d Cir. 1998)). By contrast, "a connection that is 'merely coincidental' is insufficient to support jurisdiction." Sole Resort, 450 F.3d at 103 (citations omitted).

No such nexus exists here. Indeed, aside from the general and undisputed fact that the instant suit stems from operation of the website whose domain name was registered in New York, Royalty does not identify any specific relationship at all between this suit and defendants' transaction of business within the state. Moreover, that general and undisputed fact—i.e., that defendants registered the domain name www.dishant.com in New York—is insufficient here because the transaction has no specific connection to this litigation. That it took place in New York is "merely coincidental" and of no relevance to the facts or legal issues underlying this suit. To find otherwise would be to suggest that registration of a domain name—an act courts have described as "quite simple," Acad. of Motion Picture Arts & Sciences v. Network Solutions, 989 F. Supp. 1276, 1277 (C.D. Cal. 1997)—subjects the registrant to the general jurisdiction of the state in which it registers, an argument Royalty rightly does not advance.

Accordingly, absent any additional nexus between defendants' registration of a domain name in New York and this litigation, Royalty fails to make a prima facie showing that the transaction provides a basis for asserting specific jurisdiction over defendants pursuant to section 302(a)(1).

2.    Tortious Conduct Out of State Causing Injury In State

Alternatively, Royalty seeks to invoke N.Y. C.P.L.R. § 302(a)(3)(ii), which provides jurisdiction over any person who "commits a tortious act without the state causing injury to person property within state" if he "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  Jurisdiction pursuant to section 302(a)(3)(ii), thus, requires (1) tortious activity out of state, (2) causing injury in New York, (3) that is reasonably foreseeable to a defendant, who (4) derives substantial revenue from interstate commerce. See Fantis Foods, Inc. v. Standard Importing, Co., 425 N.Y.S.2d 783, 786 (1980).

Royalty contends defendants' conduct satisfies each of those jurisdictional elements because operation of www.dishant.com amounts to copyright infringement— i.e., tortious conduct—committed out of state that causes injury to Royalty within the state, and that such injury in New York was reasonably foreseeable to defendants given the large Indian population in the state.  Royalty further contends that defendants derive substantial revenue from operation of their website, and thus, the alleged tortious conduct.  Defendants generally deny that they are causing harm, let alone harm in New York, and in particular contest that they derive substantial revenue from any of their activities.

18

Claims for copyright infringement validly allege tortious activity, McGraw-Hill Cos. v. Ingenium Techs. Corp., 375 F. Supp. 2d  252, 256 (S.D.N.Y. 2005), conducted, in this case, in the state of Virginia.  Accordingly, Royalty validly pleads the first element of jurisdiction pursuant to section 302(a)(3)(ii).

Royalty also validly pleads the second element—i.e., injury within the state of New York—because "the tort of copyright infringement causes injury in the state where the allegedly infringed intellectual property is held."  Id.; see also Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp., No. 04 Civ. 5002, 2005 U.S. Dist. LEXIS 2143, at *4 (S.D.N.Y. Feb. 14, 2005) ("[B]ecause the plaintiffs (and their intellectual property) are based in New York, the injury is felt within the state no matter where the infringement takes place.").  Here, Royalty, as the American assignee of Saregama's copyright interests, holds those interests in New York where it is based, and therefore, for purposes of this litigation, plaintiff validly pleads out-of-state tortious conduct causing injury in New York.

The jurisdictional inquiry breaks down, however, with respect to the third element because plaintiff proffers insufficient evidence to support a finding that it was reasonably foreseeable to defendants that their conduct would cause such injury in New York.  The "reasonable foreseeability" requirement, which New York courts construe "in a manner consistent with United States Supreme Court precedent" so as to "avoid conflict with federal constitutional due process requirements," Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 241 (2d Cir. 1999), requires that a "defendant's conduct and connection with the forum state [be] such that he should reasonably anticipate being haled into court there." Id. (quoting World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286 (1980)).  New

York courts thus look for "tangible manifestations" of a defendant's intent to target New York, or for "concrete facts known to the nondomiciliary that should have alerted it" to the possibility of being brought before a court in the Southern District of New York. Am. Network, Inc. v. Access Am./Connect Atlanta, Inc., 975 F. Supp. 494, 497-98 (S.D.N.Y. 1998) (citations omitted).

Here, Royalty points to neither tangible manifestations of defendants' intent to target New York nor concrete facts known to defendants that would lead them to foresee being sued in the Southern District of New York. Indeed, there is nothing in the record to indicate defendants had knowledge that a New York company held copyright interests in any of the music at issue in this action. Cf. McGraw-Hill Cos., 375 F. Supp. 2d at 256. Defendants' website is the home of Indian music, providing access primarily to music produced by Indian artists and Indian companies. Thus, while it might be reasonably foreseeable to defendants that operation of their website would cause harm in India—the record reflects defendants' knowledge that Saregama, an Indian company, held copyright interests in all the music at issue in this litigation—there is nothing in the record to indicate defendants' knowledge that an American company, let alone a New York company, had been assigned those interests, and thus that harm in New York was a reasonably foreseeable consequence of their conduct.[10]

Nevertheless, Royalty contends the harm in question was reasonably foreseeable to defendants irrespective of whether they knew who the copyright holder was or where the copyright holder was located. As Royalty sees it, the harm in question consists of the

---

[10] Defendants concede their knowledge that Saregama held copyrights on some of the music available on www.dishant.com and detail their efforts to obtain a license for that music through negotiations with Saregama directly. (Exs. B, D to Ans.) However, there is nothing in the record to indicate defendants' knowledge of Royalty's licensing agreement with Saregama or Royalty's New York location.

copyright holder's loss of sales to its primary customers—i.e., the Indian and Indian

American audience—and harm to its reputation among those customers. Moreover,

Royalty argues defendants must have foreseen causing such a harm in New York given,

as plaintiff contends, that defendants purposefully targeted New York's Indian-American

population.

      The argument falls short, however, because Royalty does not actually establish

that defendants purposefully targeted New York's Indian American population or

otherwise targeted their activities toward the state. And while lost sales resulting from

infringing activities can constitute harm for purposes of section 302(a)(3), courts have

required the harm to be accompanied by "evidence of a purposeful New York affiliation"

such as a "discernable effort to directly or indirectly serve the New York market."

Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 241 (2d Cir. 1999) (citation omitted); see

also Capitol Records, LLC, 2009 U.S. Dist. LEXIS 19557, at *29; Design Tex Group,

Inc., 2005 U.S. Dist. LEXIS 2143, at *4 (jurisdiction exists because "defendants sell their

[allegedly infringing products] to major hotel chains with numerous properties in New

York and therefore must reasonably expect that sales of infringing products to those

chains will have consequences in New York").

      Here, Royalty identifies no such purposeful New York affiliation or discernable

effort to target the state. Its only allegations in that respect—that www.dishant.com seeks

to reach an Indian audience, and that New York is home to some 15 percent of the Indian

American population—fail here for the same reasons set forth in detail above. Royalty is

otherwise left with nothing more than its "sheer speculation" that defendants intended, or

even knew of, a harm suffered within the state of New York, which, alone, is insufficient

to establish reasonable foreseeability and thus jurisdiction pursuant to section 302(a)(3).

Fantis Foods, Inc., 425 N.Y.S.2d at 787, n.4.

Accordingly, the Court finds Royalty has failed to plead a reasonably foreseeable harm in the state of New York and thus has failed to make a prima facie showing of jurisdiction pursuant to section 302(a)(3).

C.      Discovery

Finally, Royalty claims that, if the Court finds insufficient evidence to warrant the exercise of jurisdiction over defendants, it should be entitled to limited discovery in order to uncover additional facts and evidence relevant to the jurisdictional inquiry.  The request is denied.

Although the decision to grant jurisdictional discovery is left to the discretion of the district court, Janzini v. Nissan Motor Co., 148 F.3d 181, 186 (2d Cir. 1998);  Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981), to be entitled to discovery, a plaintiff must make a "threshold showing that there is some basis for the assertion of jurisdiction."  Daval Steel Prods. v. M. V. Juraj Dalmatinic, 718 F. Supp. 159, 162 (S.D.N.Y. 1989) (citing Lehigh Valley Industries, Inc. v. Birenbaum, 527 F.2d 87, 93-94 (2d Cir. 1975)).

Royalty here has made no such threshold showing.  Simply put, Royalty has failed to allege any plausible basis for finding jurisdiction pursuant to any provision of the New York long-arm statute.  Royalty has not alleged any meaningful ties between defendants and the state of New York, and those few contacts between defendants and the state Royalty has identified bear little or no relationship to the facts and issues underlying this action. To the contrary, as highlighted above, Royalty's own submissions

underscore the lack of connection between the website and New York by confirming that the vast majority of www.dishant.com visitors do not live in the United States at all, let alone in New York.

Moreover, Royalty does not put forward any compelling reasons why discovery should be allowed, nor does it identify any particular facts it would seek to adduce through such discovery or suggest how discovery could aid in this Court's jurisdictional inquiry. And it is well settled that a "plaintiff cannot put defendant through the costly process of discovery, even discovery limited to jurisdictional matters, simply because it thinks that it can probably show significant contact with the state of New York if discovery were to proceed." Bellepoint, Inc. v. Kohl's Dep't Stores, 975 F. Supp. 562, 565 (S.D.N.Y. 1997); see also Daval Steel Prods., 718 F. Supp. at 162 ("The mere commencement of a lawsuit, without the support of a threshold showing of jurisdictional prerequisites, should not entitle the party to use the court processes to attempt to find support for having commenced the litigation."). But cf. Tex. Int'l Magnetics, Inc. v. Auriga-Aurex, Inc., 334 F.3d 204, 207-08 (2d Cir. 2003).

Royalty has therefore made an insufficient showing to warrant jurisdictional discovery at this stage.

## III.    CONCLUSION

Because Royalty fails to make a prima facie showing that any provision of New York's long-arm statute gives the Court jurisdiction over non-domiciliary defendant Dishant.com, LLC, and therefore over individual defendants Dishant and Meeta Shah, the pending motion to dismiss the complaint pursuant to Rule 12(b)(2) is granted. Moreover, because Royalty fails to make even a "threshold showing" of a potential basis for this

Court's jurisdiction to hear this action, plaintiff's request for jurisdictional discovery is

denied.

Dated: New York, New York
       July 29, 2009

SO ORDERED:

Sidney H. Stein, U.S.D.J.